ANTONIO PETERPOLO, PLAINTIFF IN ERROR, v. PUBLIC SERVICE RAILWAY COMPANY, DEFENDANT IN ERROR.

Argued November 22, 1910—Decided March 6, 1911.

Plaintiff, while driving a team of horses and wagon on a city street, came to the junction of an intersecting street upon which defendant operated a line of electric street railway cars. He looked up the latter street and saw a car, then about fifty or seventy-five yards distant, coming towards him at a very high rate of speed. He was then fifteen or twenty feet from the car track, and his horses were walking. He proceeded across the track without materially accelerating his speed, and the oncoming street car collided with the rear wheel of his wagon, throwing him out upon the ground. *Held*, that the question of his contributory negligence was for the jury.

On error to the Supreme Court, whose opinion is reported in 50 *Vroom* 290.

For the plaintiff in error, *Samuel Press* and *Harry Kalisch*.

For the defendant in error, *Leonard J. Tynan*.

The opinion of the court was delivered by

PITNEY, CHANCELLOR. This action arose out of a crossing collision between an electric street railway car operated by defendant and a wagon driven by plaintiff. For the personal injuries sustained by him, plaintiff recovered a verdict and judgment in the District Court. This judgment the Supreme

Court reversed, upon the ground that plaintiff was indisputably guilty of contributory negligence.

Plaintiff was driving his team of horses and wagon westerly on Hamilton street, in the city of Newark. The street car was running in a southerly direction on McWhorter street. The evidence in behalf of plaintiff tended to show that when he reached the junction of these two streets, he looked up McWhorter street and saw the car, then about fifty to seventy-five yards away, coming towards him at a very high rate of speed. He was then fifteen or twenty feet from the car track, and his horses were walking. He proceeded on his way without materially accelerating the speed of his horses, and had got pretty well across the track when his wagon was struck by the forward end of the trolley car, throwing plaintiff out upon the ground.

Beyond a doubt, there was sufficient evidence of negligence on the part of the motorman to require the submission of that question to the jury.

The Supreme Court, in holding that the plaintiff's own negligence was so clear as to render it erroneous to submit the case to the jury, adopted the following reasoning: "The plaintiff, on reaching McWhorter street and looking up the street, saw the approaching trolley car fifty or seventy-five yards away, he then being fifteen or twenty feet from the track. If the car at that moment had been going at a moderate speed, or had appeared to the plaintiff to be either not moving or moving at a moderate speed, it could not be said that the failure to stop his team was negligence, for the plaintiff could assume that he could reach the track before the car, and that the motorman would respect his right to cross, he having gained a position on the track. But this was not the condition of affairs. All the plaintiff's witnesses say that the car was running very fast. The plaintiff himself says that the car was running with extreme rapidity. This knowledge he must have gained from observation at the time. If he saw this car only fifty or seventy-five yards away, approaching with this degree of speed, his attempt to cross in front was a clearly negligent act."

We are unable to concur with this reasoning. In the first place, assuming that the knowledge from which plaintiff testi-

fied was gained wholly from observation at the time, it is quite plain that the fact of collision was one of the facts, and, indeed, the most impressive fact, that came within his observation at the time; and he had not the benefit of this knowledge when he was called upon to decide whether he would attempt to cross the track ahead of the trolley car. In this respect the case is the simple one of "hindsight better than foresight."

But, laying this point entirely aside, and assuming that when the plaintiff observed the car approaching and attempted to cross in front of it he was indisputably charged with notice that it was being operated at a speed that, if persisted in, would endanger his safety, it is, we think, by no means clear that he was negligent in attempting the crossing. For how was he charged with notice that such a speed would be persisted in? The jury might find that at that juncture the car was two hundred and twenty-five feet from the crossing, perhaps somewhat more, and that the plaintiff had but fifteen feet to go before reaching the crossing, perhaps somewhat less; for the evidence as to these distances is of course only approximate. The plaintiff had a right to rely upon the duty imposed by law upon the traction company, and upon the motorman in charge of the car in question, to exercise care in operating the car in respect to its speed, and the control thereof, so as not to endanger the safety of other travelers using the highway, whether on foot or in wheeled vehicles. Plaintiff might reasonably suppose that the motorman was aware that he and his employer had no paramount or exclusive right in the highway, and that he must keep such a lookout on the tracks ahead of him, and must keep his car under such control, as to be able to reduce its speed, and even to bring it to a standstill, if necessary, to avoid collision with a traveler who, without negligence on his part, might happen to cross the tracks in front of the trolley car. Plaintiff had a right to assume that the motorman was aware that if plaintiff, without negligence on his part, reached the point of crossing ahead of the trolley car, he had the right of way, and that such right of way would be respected by the motorman. In short, plaintiff might reasonably assume that the motorman

would keep a lookout, and would control and reduce the speed of the car, until plaintiff was charged, or at least until a reasonably prudent person in his position would have been charged, with notice that the car was being operated either in ignorance of his presence or in complete defiance of his rights.

Now, it does not seem to us at all clear, from the fact that the plaintiff, when about fifteen or twenty feet from the crossing and approaching it with his horse walking, saw the trolley car coming at a distance of fifty or seventy-five yards and operated at an unduly high rate of speed, that the plaintiff was at that time indisputably charged with notice that that rate of speed would be continued, or that the trolley car would be so far uncontrolled as to collide with his wagon while he was proceeding over the crossing. Nor is it clear that he was charged with such notice at any time before he had entered upon the crossing. Just how close the car had approached before plaintiff actually drove upon the track was open to question upon the evidence. That it was still at a considerable distance might fairly be inferred; among other reasons, because although plaintiff's horses were walking he almost succeeded (according to one view of the evidence) in safely crossing, the car striking only the rear wheel of his wagon. Assuming the car was still at a considerable distance when plaintiff drove upon the track, how was he then clearly charged with notice that the car would probably collide with him, either because of the motorman's negligence, or disregard of his rights, or for any other reason? The jury might infer that at this juncture the plaintiff, being so nearly in the path of the approaching car, could not accurately estimate its rate of speed, and might readily misjudge the extent to which its speed was being retarded by the brake. (The motorman testified that he applied the airbrake, but that the track was greasy and the car slid upon it.) And whether, after plaintiff had actually driven upon the track, he could make any further effective observation of the car, or could prudently attempt to do so, in view of the attention he must needs give to his horses—these were questions for the jury to determine.

The relative rights and obligations of street railway companies and their employes, on the one hand, and of ordinary travelers using the highway, on the other, have so often been under consideration in this court and in the Supreme Court as to require no further elaboration at present. *Orange and Newark Horse Railroad Co.* v. *Ward,* 18 *Vroom* 560, 563; *Newark Passenger Railway Co.* v. *Block,* 26 *Id.* 605, 610, 611, 613; *Consolidated Traction Co.* v. *Lambertson,* 30 *Id.* 297, 299; *affirmed,* 31 *Id.* 452; *Electric Railway Co.* v. *Miller,* 30 *Id.* 423; *Consolidated Traction Co.* v. *Glynn, Id.* 432; *Atlantic Coast Electric Railroad Co.* v. *Rennard,* 33 *Id.* 773, 775, 777, 778; *Searles* v. *Elizabeth, &c., Railway Co.,* 41 *Id.* 388, 391; *Conrad* v. *Elizabeth, &c., Railway Co., Id.* 676; *Bauer* v. *North Jersey Street Railway Co.,* 45 *Id.* 624; *Migans* v. *Jersey City, &c., Railway Co.,* 47 *Id.* 535; *Joerg* v. *Public Service Railway Co.,* 48 *Id.* 372; *Zindler* v. *Public Service Railway Co.,* 49 *Id.* 536.

In *Consolidated Traction Co.* v. *Lambertson,* 30 *Vroom* 297, the facts were that Lambertson was driving in a public street on which defendant's trolley cars ran, and turned his horse to cross one of the company's tracks, although he saw a car coming toward him "as fast as it could" upon that track, the car being, when he started to cross, about three hundred feet away. Although he had but a short distance to traverse and his horse was going on a little trot, the car struck his wagon between the front and hind wheels. Mr. Justice Magie (afterwards Chancellor) employed the following well-considered language: "The rights of Lambertson and the traction company to use the street for the passage of their respective vehicles were exactly the same with a single exception. Because the cars of the company cannot deviate from the tracks, other vehicles must give way to them when there is occasion for them to pass. But neither Lambertson nor the company could drive their vehicles at a rate of speed incompatible with the safe and customary use of it by other vehicles or by foot passengers. Whether or not it must necessarily be inferred from Lambertson's statement that the car was moving "as fast as it could,"

that he must have known it was being run in an illegal manner, may perhaps be doubted. But assuming such an inference must be drawn, it does not necessarily follow that he should have concluded that the car would continue to be driven in the same way. He who puts himself in the way of runaway horses who have escaped from the driver's control, must know that he is taking a risk. But a jury may well say that he who crosses in front of a trolley car provided with a motorman, may assume that it is furnished with the means of stopping or reducing speed. Then there was a question for the jury in this case whether a prudent man, upon such an assumption, might not judge it safe to cross in front of a trolley car three hundred feet away, although coming at great and illegal speed. Upon the assumption of the existence of means to reduce speed and to stop, and of a servant employed to make use of such means, it would be absurd to say that one was bound to refrain from crossing for fear the servant would not make use of the means." The decision of the Supreme Court in that case was affirmed in this court, with tacit approval of this reasoning. 31 *Vroom* 452.

In *Electric Railway Co.* v. *Miller,* 30 *Vroom* 423, 425, this court laid down the rule that the driver of the wagon has the right of way if, proceeding at a rate of speed which under the circumstances of the time and locality is reasonable, he should reach the point of crossing in time to go upon the tracks in advance of the approaching trolley car, the latter being sufficiently distant to be checked and, if need be, stopped before it should reach him.

In the case now before us, the Supreme Court cited as the sole authority for its decision *Schwanewede* v. *North Hudson Railway Co.,* 38 *Vroom* 449, where the same court laid down the rule that "if it appears that the trolley car motorman is not going to respect your rights to cross the street first, you must wait, or you are guilty of contributory negligence, if hurt." For this proposition the court relied upon the decision of this court in *Earle* v. *Consolidated Traction Co.,* 35 *Id.* 573. But this case was decided by an equally divided court, and so is not

to be taken as an authority. What was said by Mr. Justice Van Syckel, who spoke for one-half the court, is to the effect that the trolley car and the plaintiff (who was driving a horse) had equal rights upon the streets and upon the crossings, and the first to reach the crossing had the right to pass over it first; that assuming the plaintiff reached the crossing in advance of the car, yet if it then was apparent that his rights were not being observed by the motorman, he could not proceed without imprudence, and was bound to stop or to turn aside if he could by the exercise of due care do so, and protect himself from injury. We are not concerned with the question whether this is a correct statement of the driver's duty under the circumstances noted. For in the present case there was, as already shown, a question for the jury whether the plaintiff on reaching the crossing was charged with notice that the motorman had failed to observe him or was operating the car in defiance of his rights.

The only other case cited in the Schwanewede case is *West Jersey Railroad Co.* v. *Ewan*, 26 *Vroom* 574, 576. But that was a collision at the crossing of a steam railroad, and is quite inapplicable to the case of a crossing of street railway tracks laid in a highway and forming a part of it.

The judgment of the Supreme Court should be reversed, and the judgment of the District Court affirmed, with costs.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, VOORHEES, BOGERT, VREDENBURGH, VROOM, CONGDON, JJ. 11.