## J. ALBERT SEE, PLAINTIFF-APPELLEE, v. PUBLIC SERVICE RAILWAY COMPANY, DEFENDANT-APPELLANT.

Submitted July 5, 1911—Decided December 9, 1911.

1. The driver of a truck heavily laden with fruit, approaching a trolley track, his horse being on a walk and about nine feet from the track, saw a car coming very fast about two hundred feet away, continued his course, at the same gait, across the track, and before the rear end of the truck had entirely cleared the track it was struck by the car and upset, injuring and damaging the horse, truck and fruit. *Held*, that the court committed no error in submitting the question, whether the driver exercised due care in crossing the track, to the jury for determination.

2. Although the remarks of counsel for plaintiff in summing up were improper, they were discontinued upon objection being made thereto by defendant's counsel, and the court was not asked to admonish counsel, nor was there any request made to the court to charge the jury to disregard them, nor was there any refusal on part of the court to interpose, and, therefore no basis was laid for a valid assignment of error requiring a reversal of the judgment.

On appeal from the Hoboken District Court.

Before Justices GARRISON, TRENCHARD and KALISCH.

For the appellant, *Edwards & Smith*.

For the appellee, *Weller & Lichtenstein*.

The opinion of the court was delivered by

KALISCH, J. The plaintiff brought his action against the defendant to recover damages which the plaintiff sustained to his property as a result of a collision which took place on Henderson street, in Jersey City, between a car of the defendant company and a heavily loaded one-horse truck which was being driven across the trolley track on said street. Henderson street, where the collision occurred, runs north and south. On the east side of Henderson street, between Second and Third

streets, is the freight yard of the Pennsylvania Railroad Company. This yard is enclosed by a high board fence, and the conceded fact is that it is impossible for anyone walking or driving out of said yard to see any vehicle going or coming on Henderson street, in either direction, until the fence line of said yard is passed. The defendant maintained two trolley tracks on Henderson street upon which its cars were operated. The distance from the fence line to the most easterly rail of the northbound track was twenty-three feet. The entire length of horse and truck was conceded, at the trial, to be twenty-five feet. The collision took place shortly after midnight and at a place which was lighted up by electric lights.

According to the driver's story he was driving slowly through the gateway of the yard, his truck being heavily loaded with fruit, and when he attained a position about two feet beyond the fence line, he then perceived a trolley car about two hundred feet or more distant approaching "pretty fast" on the northbound track. At this juncture the horse must have been within nine feet of the easterly rail of the northbound track. The driver continued on his course, at the same gait, and bearing to the north, across the track, and had nearly succeeded in clearing the track of the truck when "the car just struck the tail end of it," as the driver puts it, thereby upsetting it and the horse, and causing considerable loss and damage.

The undisputed facts make it manifest that the case was one peculiarly within the province of the jury to decide. The entire length of the horse and truck was twenty-five feet. The distance from the fence line to the most easterly rail of the northbound track was twenty-three feet. The situation was such that the horse as soon as he emerged from behind the fence would become visible to the motorman, if, in the performance of his duties, he was on the alert to observe the condition of the street, before the driver of the truck would be in a position to see the approach of the car. The horse and truck going slowly traveled a distance therefore of twenty-three feet, and in addition thereto, almost the distance of their entire length of twenty-five feet, in full view of the motorman, before

the impact came. A reasonable inference, to be drawn from such a state of facts, would be that the motorman must have disregarded his duty to keep his car under control or in check, to avoid colliding with the truck. The driver of the truck was entitled to believe that the motorman would respect his right to cross the track, if he were in a position where he might reasonably believe he could do so with reasonable safety, if both he and the motorman were in the exercise of reasonable care, and the fact that he had nearly cleared the track of the truck before the impact came, although he was driving slowly, strongly emphasizes his reliance on that belief. There is nothing in the testimony which in the slightest indicates that the driver of the truck had any reason to believe that his right to cross the track in safety would not be recognized by the motorman. Nor was the driver of the truck to be charged with notice because the car was approaching rapidly, that it could not be controlled or brought in check in time to avoid colliding with the truck. *Peterpolo* v. *Public Service Railway Co.* (*Court of Errors and Appeals*), reversing the Supreme Court, 52 *Vroom* 390.

Another reason advanced by the appellant for a reversal of the judgment is that the court erred in permitting one Mr. Callison, on page 113 of the case, to answer this question, "Could you sell him?" upon the ground that it was hearsay testimony. This question related to the effort made by the witness to sell the horse which had been turned over to him by the plaintiff for that purpose. It is obvious that the question was directed to the personal knowledge of the witness as to his own acts and was therefore unobjectionable on the ground taken by counsel.

It is strenuously insisted by appellant that the judgment should be reversed because the court allowed the plaintiff's counsel, in summing up, to make improper remarks to the jury. The remarks of plaintiff's counsel in summing up, although apparently provoked by remarks made by appellant's counsel were, nevertheless, in some instances improper, but upon objection made they were discontinued. There was no

request made by appellant's counsel to the court either to admonish plaintiff's counsel or to charge the jury to disregard such objectionable remarks. There was no refusal of the court to interpose.

"Where counsel in summing up proceeds to dilate upon facts not in evidence, or to press upon the jury considerations which the jury would have no right to regard, it is the plain duty of the court, upon objection made, to interpose; and a refusal of the court to interpose, where otherwise the right of the party would be prejudiced, would be legal error." *Blackman* v. *West Jersey and Seashore Railroad Co., 39 Vroom* 5.

An examination of the other alleged errors relied on by the appellant for reversal discloses them to be without substance.

Judgment will be affirmed.